UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SILVIA LARA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-2286-B |
| | § | |
| AAA TEXAS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM ORDER

Before the Court is Defendant AAA Texas's (hereinafter, "AAA") Motion to Compel Arbitration and Dismiss all Proceedings (doc. 9) (hereinafter, the "Motion"). Having considered the Motion, the Court is of the opinion that it should be and hereby is **GRANTED**.

## I.

## BACKGROUND

This case involves claims of work-place discrimination. Plaintiff Silvia Lara (hereinafter, "Lara"), proceeding *pro se*, began working for AAA in April 2004. (Compl. 2.) Lara maintains that while working for AAA, she was repeatedly passed over for promotions, which were ultimately awarded to less qualified caucasians under forty years of age. (*Id.* at 2-4.) Lara filed the instant action on December 30, 2008, alleging she was discriminated against because of her race and age in violation of federal law. (*Id.* at 1-4.)

In July 2005, AAA notified its employees that it was instituting a new arbitration agreement effective August 1, 2005. (Def.'s Mot. to Compel Arbitration Ex. 1-A.) The notice informed AAA's

employees that their continued service would constitute an acceptance of the arbitration agreement's terms. (*Id.*)  In relevant part, the arbitration agreement states:

> To the fullest extent permitted by law, AAA Texas and you hereby agree that any and all claims of any nature or kind arising out of, relating to, or connected with this Agreement or your employment, including, but not limited to, your application for employment, hiring decision, employment relationship or the termination of your employment, between you and AAA Texas and/or any of its employees, agents, officers, or directors ("Arbitrable Claims"), will be subject to and be resolved exclusively by and through final and binding arbitration.

(*Id.*)  The agreement stipulates that neither AAA nor any employee may modify the arbitration agreement absent a mutual agreement enshrined in writing. (*Id.*)

Citing the Federal Arbitration Act (hereinafter, "FAA"), 9 U.S.C. § 2, AAA filed the instant Motion, asking the Court to dismiss Lara's claims and compel the parties to participate in arbitration. (*Id.* at 1.)  The Motion being ripe,[1] the Court now turns to the merits of its decision.

## II.

## LEGAL STANDARDS

"The FAA 'is a congressional declaration of a liberal policy favoring arbitration.'" *In re Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  Upon motion of a party, 9 U.S.C. § 3 provides for a mandatory stay in judicial proceedings when the parties have agreed to arbitrate their dispute.  "To ascertain whether the parties have agreed to arbitrate a particular claim, [courts] must determine: '(1) whether there is a valid agreement to arbitrate between the parties;

---

[1] The Court notes that Lara's response to AAA's Motion was filed well after the twenty day deadline imposed by N.D. Tex. R. 7.1(e).  The Court will, however, address Lara's argument in opposition to the Motion, as her has no bearing on the Court's final disposition.

and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" *Pers. Sec. & Safety Sys. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (quoting *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001)). As a consequence of the liberal policy toward arbitration, there is a presumption favoring arbitration in the face of any doubts as to the scope of a valid agreement. *Pers. Sec. & Safety Sys.*, 297 F.3d at 388. The presumption in favor of arbitration does not apply, however, to the initial determination of whether a valid arbitration agreement exists. *Morrison v. Anway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). The existence of a valid agreement is determined by reference to "ordinary state-law principles that govern the formation of contracts.'" *Id.* (quoting *First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938 (1995)).

Once the presence of a valid arbitration agreement is determined, courts must distinguish between two types of arbitration agreements: broad and narrow. *See In re Complaint of Hornbeck*, 981 F.2d at 754. If an agreement is broad, all judicial proceedings should be stayed and all claims should be referred to the arbitrator. *Id.* In contrast, if the agreement is narrow, courts must determine whether a given dispute is governed by the arbitration agreement in the first instance. *Id.* at 755.

### III.

### ANALYSIS

AAA asks the Court to dismiss Lara's claims and compel the parties to participate in arbitration proceedings. Lara responds that there is no valid agreement to arbitrate between herself and AAA. The Court will first assess the legal viability of the arbitration agreement and then examine its scope.

A.  *The Existence of a Valid Arbitration Agreement*

Lara alleges that the arbitration agreement is not valid because it was not in effect when she

began her employment in 2004. Because the terms of the agreement state that her continued employment constituted her assent to its terms, Lara alleges that the agreement was unilateral. In further support of her position, Lara claims she could not have assented to the agreement's terms because she did not fully understand the agreement when it was first proposed in July 2005, and AAA never attempted to explain its implications.

As explained *supra*, state law principles of contract law dictate the validity of the parties' arbitration agreement. The Court will look to the law of Texas, the forum state, as the arbitration agreement provides that Texas law governs its terms,[2] and the parties do not dispute the validity of this clause. *See, e.g., Mott v. Market Street Mortgage Corp.*, 2007 WL 2457609, at *2 (N.D. Tex. Aug. 29, 2007).

It is well settled under Texas law that an arbitration agreement of this nature is valid and binding. *See Morrison*, 517 F.3d at 254-58; *In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2002). In *In re Halliburton Co.*, the plaintiff was an at-will employee for a subsidiary of defendant Halliburton for approximately thirty years. *In re Halliburton Co.*, 80 S.W.3d at 568. In 1997, Halliburton sent out a notice of a new company-wide arbitration agreement between itself and its employees. *Id.* The notice informed Halliburton employees that their continued employment constituted an acceptance of the arbitration agreement. *Id.* After the arbitration agreement took effect, plaintiff was demoted. *Id.* Plaintiff filed suit in Texas state court alleging he was discriminated against on the basis of his race and age. *Id.* Halliburton moved to stay the judicial

---

[2]Specifically, the arbitration agreement provides: "This Agreement shall be governed by the laws of the State of Texas and/or the Federal Arbitration Act, as applicable." (Def.'s Mot. to Compel Arbitration Ex. 1-A.)

proceedings pending arbitration, and plaintiff challenged the validity of the arbitration agreement, averring he never assented to its terms, and that he did not understand the import of the arbitration agreement when he received notice of its implementation. *Id.* On a petition for a writ of mandamus, the Texas Supreme Court confirmed the validity of Halliburton's arbitration agreement, holding plaintiff's continued employment constituted a valid acceptance of the agreement's terms as a matter of law. *Id.* at 568-69, 572-73.

More recently, the Fifth Circuit United States Court of Appeals confirmed the continuing vitality of the Texas Supreme Court's decision in *In re Halliburton*. *Morrison*, 517 F.3d at 254-57. The Fifth Circuit noted, however, that *In re Halliburton* is not without limits. *Id.* Specifically, the court explained that once an agreement such as that implemented in *In re Halliburton* is effectuated, the employer cannot maintain the right to unilaterally amend or modify such an agreement. *Id.* at 257-58. To amount to more than an illusory promise, the agreement must truly bind both employee and employer. *Id.*

In the case at bar, AAA enacted its arbitration agreement under circumstances identical to those present in *In re Halliburton*. Lara was given notice of the date the arbitration policy would take effect, and informed that her continued employment would constitute acceptance of the agreement. Lara's continued employment thus amounted to an acceptance of the arbitration agreement as a matter of law. *See In re Halliburton*, 80 S.W.3d at 569-70. Moreover, the agreement states that neither AAA nor its employees can modify the agreement's terms without memorializing such an agreement in writing. The arbitration agreement is thus binding upon both AAA and Lara and is not illusory. For these reasons, the Court finds that the arbitration agreement is valid and binding under Texas law. Having so determined, the Court will now move to whether Lara's dispute falls

within the scope of arbitrable claims covered by the agreement.

  B.  *The Scope of the Arbitration Agreement*

  AAA stresses the sweeping nature of the parties' agreement, which states that "all claims of any nature ... arising out of" one's employment shall be arbitrated. (Def.'s Mot. to Compel Arbitration Ex. 1-A.) Arbitration clauses of this nature classify as broad in scope. *In re Complaint of Honrbeck*, 981 F.2d at 755 ("We have held that arbitration clauses containing the 'any dispute' language, such as the one presently before us, are of the broad type."). The agreement, therefore, being of the broad category, the Court must **GRANT** AAAs' request, and refer these proceedings to arbitration. *See id.* at 755-56. Accordingly, the Court **DISMISSES** Lara's claims **with prejudice** so that the parties may arbitrate Lara's claims in accordance with their arbitration agreement. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (stating dismissal with prejudice, rather than a stay in proceedings, is appropriate when all of the issues raised in the district court must be referred to arbitration under 9 U.S.C. § 3).

### IV.

### CONCLUSION

  For the foregoing reasons, the Court **GRANTS** AAA's Motion to Compel Arbitration (doc. 9), and **DISMISSES** Lara's claims **with prejudice**. The parties are directed to resolve their dispute through arbitration in accordance with their agreement.

  **SO ORDERED, DATED April 16, 2009.**

              _____
              JANE J. BOYLE
              UNITED STATES DISTRICT JUDGE